# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| THOMAS ANTHONY LITTEK, ) | |
|     Plaintiff ) | Civil Action No.: 7:16cv00072 |
| ) | |
| v. ) | |
| ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| HAROLD CLARKE, et al., ) | By: Pamela Meade Sargent |
|     Defendants ) | United States Magistrate Judge |

The pro se plaintiff, Thomas Anthony Littek, an inmate incarcerated at Pocahontas State Correctional Center, ("Pocahontas"), brings this civil rights action pursuant to 42 U.S.C. § 1983, against the defendants, Harold Clarke, Director of the Virginia Department of Corrections, ("VDOC"), Frederick Schilling, VDOC's Medical Director, Stanley Young, Warden at Pocahontas, and Adam K. Wyatt, VDOC's Chief Dentist.[1] In his Complaint, Littek alleges that the defendants violated his Eighth Amendment rights through their deliberate indifference to his need for dental treatment and dentures. (Docket Item No. 1, ("Complaint.")) Littek also has filed motions requesting that preliminary injunctive relief be entered. (Docket Item Nos. 7, 28, ("Motions.")) An evidentiary hearing was held on the Motions on March 31, 2016. For the reasons discussed below, I recommend that the court deny Littek's Motions requesting preliminary injunctive relief.

---

[1] At the March 31, 2016, hearing, the court granted Littek's motions to dismiss his claims against Armor Correctional Health Services, Inc., and to substitute Adam K. Wyatt for the defendant named as "John Doe."

*I. Facts*

In his Complaint, Littek claims that the defendants have denied him necessary dental care in deliberate indifference to his serious medical needs. Littek seeks injunctive relief requiring the defendants to provide "dental care that will restore plaintiff's oral health." (Complaint at 10-11.) In the Motions, Littek seeks preliminary injunctive relief requiring the defendants "to provide a medically appropriate course of treatment to the plaintiff designed to restore plaintiff's oral health and restore the full function of plaintiff's mouth."[2] In a declaration attached to one of the Motions, Littek stated that he suffered pain, swelling and bleeding in his mouth. (Docket Item No. 7-1 at 1.)

According to Littek's testimony at the March 31 hearing, he received a dental evaluation upon intake and subsequent dental treatment at Powhatan Correctional Center, ("Powhatan"), in April 2015. Littek testified that the dentist who performed this intake evaluation told him that he needed dentures. Littek said that, while at Powhatan, he filed an Offender Request form on May 8, 2015, requesting upper dentures. (Plaintiff's Exhibit No. 3, Docket Item No. 46-3.) Littek testified that he was transferred to Pocahontas on May 22, 2015, and, upon his arrival, he immediately filed a Request for Service Form, (Plaintiff's Exhibit No. 4, Docket Item No. 46-4), requesting to see a dentist "to be fitted for an upper denture." Littek said that he received this form back a few days later, on which it stated that he was scheduled to see the dentist.

---

[2] While Docket Item No. 28, a March 11, 2016, letter to the undersigned, has been docketed as a motion for a preliminary injunction, the pleading contains no request for injunctive relief. This pleading asserted that VDOC employees were harassing and retaliating against Littek as a result of his filing this lawsuit against the defendants, yet Littek offered no evidence regarding these claims at the March 31 hearing.

Littek testified that he filed another Request for Service Form, (Plaintiff's Exhibit No. 5, Docket Item No. 46-5), on May 31, 2015. He said that this form also was returned to him a few days later, stating that he was "already scheduled" to see the dentist. On June 6, 2015, Littek testified that he filed another Request for Service Form, (Plaintiff's Exhibit No. 6, Docket Item No. 46-6), asking when he would see the dentist. The response on the form was: "You will get a pass in the mail when your appointment comes up." Littek said he filed another Request for Service Form, (Plaintiff's Exhibit No. 7, Docket Item No. 46-7), on June 12, 2015. The response was: "You are already scheduled."

Littek testified that on June 13, 2015, he filed another Request for Service Form, (Plaintiff's Exhibit No. 8, Docket Item No. 46-8), requesting the names of Pocahontas's medical contractor, the name of the company's chief executive officer and the company's address for litigation purposes. Littek said he did not receive the requested information, but was, again, told that he was scheduled to see the dentist. Littek stated that on June 26, 2015, he filed an Informal Complaint alleging that the dental staff at Pocahontas was being deliberately indifferent to his need for dental treatment and dentures. (Plaintiff's Exhibit No. 9, Docket Item No. 46-9.) The response from the Dental Department to this Informal Complaint was that the department had received each previous request that Littek had sent and that he would receive a pass in the mail when his appointment was scheduled.

Littek testified that he filed a Regular Grievance regarding his need for dental treatment and dentures on July 2, 2015. (Plaintiff's Exhibit No. 10, Docket Item No. 46-10.) The Level I response to Littek's Grievance was that his claim was unfounded because his condition did not constitute an emergency, and he was on the list to be seen by dental. (Plaintiff's Exhibit No. 12, Docket Item No. 46-12.)

Littek appealed this decision. (Plaintiff's Exhibit No. 13, Docket Item No. 46-13.) In the Level II response, Littek was told that his request for dentures was not a serious medical issue, but, rather, was routine dental care, which would be addressed in the chronological order of his request. (Plaintiff's Exhibit No. 15, Docket Item No. 46-15.) His claims were again determined to be unfounded.

Littek filed another Request for Service Form on July 17, 2015, asking when he would see a dentist. (Plaintiff's Exhibit No. 11, Docket Item No. 46-11.) Again, the response was that he was "scheduled" to see a dentist. Littek also said that he sent a letter to Warden Young on August 1, 2015, seeking the names and titles of all persons at VDOC having responsibility for providing dental care because he planned to file suit against them. (Plaintiff's Exhibit No. 14, Docket Item No. 46-14.) Littek testified that the only response he received was his letter returned with a copy of a June 11, 2009, Memorandum from Warden Young addressing Tobacco Regulations and Correspondence To The Warden's Office. (Plaintiff's Exhibit No. 16, Docket Item No. 46-16.) This memorandum stated, in part: "Offenders are also reminded that submitting letters to staff members instead of using the Request for Service form … [is] not authorized. These items will be returned without a response."

Littek testified that he saw the dentist at Pocahontas on August 14, 2015, and he had an impression made of his upper gums only. Pursuant to the dentist's instruction, Littek said that he submitted a Request for Service Form later that same day requesting to have his remaining teeth cleaned. (Plaintiff's Exhibit No. 17, Docket Item No. 46-17.) On this form, Littek stated that he preferred to have his remaining bottom teeth pulled and a bottom denture made before his release date.

Littek also testified that he submitted an Informal Complaint on August 11, 2015, based on his cell being searched and his receiving a disciplinary charge. (Plaintiff's Exhibit No. 18, Docket Item No. 46-18). Littek said that he believed that this search and subsequent charge was in retaliation for his repeated filings requesting dental treatment. Littek testified that the dentist saw him again on September 18, 2015. On this occasion, the dentist pulled all but four of Littek's bottom teeth. Littek said that he filed a Request for Service Form on September 21, 2015, (Plaintiff's Exhibit No. 19, Docket Item No. 46-19), because the dental technician told him that the Dental Department would not make a set of lower dentures for him. Again, the only response was that Littek was scheduled for an appointment. Littek conceded that he saw the dentist again on September 24, 2015, and an impression was made of his bottom gums.

Littek testified that, without teeth or dentures, eating was painful and difficult. He stated that he could not eat salad or hard items such as taco shells. He also stated that it was difficult to eat breaded meat patties, sandwiches and hotdogs without teeth or dentures. Littek stated that inmates at Pocahontas are given only one utensil with meals, a utensil called a "spork," which is a combination spoon and fork. He said that no knives are provided. Littek said that he tries to cut his food into smaller pieces with the spork, but that, because he has no teeth, he must swallow many large chunks of food. Littek also stated that the four remaining bottom teeth cut into his upper gums when he chews. Littek conceded that, despite his complaints of pain, he never requested to be seen by the medical staff at Pocahontas.

Littek called inmate Rodney Wayne Mullins, #1063288, to testify that, as a VDOC inmate at Pocahontas, he had waited for seven months before he saw a

dentist two weeks prior to the hearing date. Mullins said that he had only five bottom teeth remaining, and he was trying to get put on the schedule to receive dentures. Mullins said that he had arrived at Pocahontas in July 2015 with 10 remaining teeth. He said that his five remaining top teeth were pulled in July 2015 after he arrived at Pocahontas. Mullins said that he was supposed to be "fitted" for dentures and was allowed to go to the Dental Department about two weeks prior to the hearing date. Mullins said that the dentist told him that he would not make dentures for him if he had no "money on the books." Mullins said that he had never been offered a soft diet. He testified that he had once requested a soft diet and was told by one of the dental assistants that the prison would not provide such a diet. Littek also submitted a sworn statement from Mullins into evidence. (Plaintiff's Exhibit No. 1, Docket Item No. 46-1.)

Littek also called inmate Michael Brady Lester, #1179394, to testify. Lester said that he had a filling fall out of one of his teeth about six months ago and that, as a result, he had suffered from a lot of pain. Lester stated that, for the past six months, the only response he had be given to his requests for dental treatment was that he was scheduled. Littek also submitted a sworn statement from Lester into evidence. (Plaintiff's Exhibit No. 2, Docket Item No. 46-2.)

Pocahontas Nurse Jessica Blair Hampton, L.P.N., testified that Littek was 5 feet, 10 inches tall and weighed 175 pounds when he arrived at Pocahontas. Hampton said medical staff at Pocahontas has seen Littek on three occasions since the day of his arrival. On December 30, 2015, Littek was seen for a complaint of hemorrhoids. On this occasion, Hampton said, Littek weighed 171 pounds. On January 15, 2016, Littek was seen for a complaint of red, irritated and scratchy eyes. On this occasion, she said, Littek weighed 169.4 pounds. On March 12, 2016,

Littek was seen for discharge from the prison because it was approximately six months before his release date. On this occasion, Hampton said, Littek weighed 163 pounds.

Hampton said that Pocahontas's medical records showed that Littek had lost approximately 12 pounds since his arrival. Hampton stated that, in her opinion as a nurse, this was not a medically significant weight loss. Hampton said that the average weight for a man of Littek's height was 156.6 pounds. Hampton also testified that the medical records did not contain any complaint by Littek of not receiving proper nutrition or of a weight loss due to inability to chew his food. She also said that, according to the medical records, Littek had never requested a special diet. Hampton did concede, however, that, if Littek had requested a special diet due to pain while chewing, that request probably would have been made to the Dental Department.

Hampton testified that a person's weight could fluctuate daily and hourly, with a person's lowest weight of the day usually being in the morning. Hampton stated that a weight loss usually reflected that a person was consuming fewer calories than he was burning. She also said that several other factors, such as bowel movements, stress and anxiety and emotional problems could cause a weight loss.

Dr. Adam K. Wyatt, Chief Dentist at the VDOC, also testified at the March 31 hearing. Dr. Wyatt stated that before becoming the Chief Dentist at the VDOC, he worked for the VDOC as a dentist at Deerfield Correctional Center. Before that, he said that he worked as a dentist in the military and in private practice. Dr. Wyatt testified that, as Chief Dentist, he was responsible for supervising all of the dentists

who worked for the VDOC at its various facilities. He stated that all dental staff at all VDOC facilities were VDOC employees, with the exception of contract dentists who substituted at VDOC facilities on occasion.

Dr. Wyatt testified that VDOC Operating Procedure 720.6 sets out various procedures regarding dental care for VDOC inmates. Under this policy, Dr. Wyatt said, dentures was classified a "routine treatment." Dr. Wyatt stated that an intake dental examination is performed on every inmate who is received into the VDOC. During this intake screening and examination, a treatment plan is developed if an inmate needs dental treatment. Dr. Wyatt said that the VDOC's dentists try to save an inmate's teeth, if possible.

Dr. Wyatt stated that an inmate needed at least one year remaining on his sentence to start and complete the process of obtaining dentures. He stated that the process typically involved four steps, with an average turn around time of three to four months for each step. Dr. Wyatt testified that this delay between steps was not caused by any shortage in dental staff, but, rather, was caused by the need for gums to heal or the need to receive products from denture manufacturers. Before the process to fit an inmate with dentures begins, Dr. Wyatt said, a VDOC dentist would remove any teeth that could not be saved and attempt to stabilize an inmate's remaining teeth. Once this is accomplished, the dentist would make a preliminary impression, which would be sent to a laboratory to have custom trays made to make a better impression. When these custom trays were returned, the dentist would see the inmate to make a custom final impression for the molds. Dr. Wyatt said that the third step involved making jaw relational records by taking measurements on wax occlusal rims as a guide to start placing the teeth in the dentures. The final step was the wax rim set up, or wax try-in, when the wax

occlusal rims with the teeth in them are fitted into an inmate's mouth. Dr. Wyatt stated that this was the final adjustment stage before the teeth were actually set into the hardened resin material of the denture plates.

Dr. Wyatt conceded that Operating Procedure 720.6 states that inmates at three VDOC facilities for women – Central Virginia Correctional Unit #13,[3] Fluvanna Correctional Facility for Women and Virginia Correctional Facility for Women – can start the process to obtain dentures if they have only six months remaining on their sentences, if they are completely toothless.

Dr. Wyatt stated that when he became the Chief Dentist at VDOC on September 1, 2015, Pocahontas had a full-time dentist on staff. He said that this dentist was terminated a couple of weeks later. Since that time, Dr. Wyatt said that the VDOC has provided dental care at Pocahontas by arranging for dentists from other VDOC facilities to travel to Pocahontas. At first, these dentist were coming to Pocahontas two days a month, but Dr. Wyatt stated that these dentists are now coming to Pocahontas four days a month.

Dr. Wyatt testified that Littek's dental records showed that he was seen by a dentist at Pocahontas on August 14, 2015, and a final impression was made for his upper dentures. Dr. Wyatt stated that a dentist or the dental staff at Pocahontas had seen Littek four times. On September 18, 2015, the dentist extracted Littek's lower teeth. While a dentist would usually wait six months to let a patient's gums heal, Dr. Wyatt said, the dentist at Pocahontas saw Littek again on September 25, 2015,

---

[3] Dr. Wyatt identified this facility as "CVCU" and stated that it was a female facility. According to the VDOC website, found at https://vadoc.virginia.gov/facilities/, Central Virginia Correctional Unit #13, a female field unit, is the only VDOC facility that corresponds to these initials.

and made the final impression for Littek's lower partial dentures. Dr. Wyatt said that Littek's records reflect that he suffered from periodontal disease, and the dental staff treated him for this condition from September to February to get his mouth and gums in good enough condition to proceed with the process to make his dentures. Dr. Wyatt stated that a dental hygienist saw Wyatt again in February and started working on the health of his remaining teeth. Dr. Wyatt stated that a dentist saw Littek on March 22, 2016, and made his jaw relational records on the wax occlusal rims. Dr. Wyatt stated that Littek's next visit would be for the final wax try-in. He stated that he expected that this would occur within three to four months of Littek's last dental visit on March 22. Dr. Wyatt stated that by skipping the making of preliminary impressions, the VDOC dentists actually had attempted to speed along the process for Littek.

Dr. Wyatt testified that Littek's dental records do not reflect that he ever made any complaints to the dental staff at Pocahontas. In fact, Dr. Wyatt said that Littek's records show that he declined pain medication when he had his teeth extracted on September 18, 2015. Dr. Wyatt said that Littek had never requested a special diet, but that, if Littek had requested it, the dental staff would have ordered that he receive a mechanical soft diet. Dr. Wyatt said that a mechanical soft diet was available within the VDOC and, under this diet, an inmate's food was blended to the consistency of baby food. Dr. Wyatt stated that it was possible for a person without teeth to eat a regular diet, dependent on the person's comfort level.

*II. Analysis*

The Eighth Amendment to the U.S. Constitution not only prohibits excessive sentences, but it also protects inmates from inhumane treatment and conditions

while imprisoned. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). This includes a requirement that a state provide medical and dental care to those it punishes by incarceration. *See Estelle v. Gamble,* 429 U.S. 97, 103 (1976); *Chapman v. Rhodes*, 434 F. Supp. 1007, 1020 (S.D. Ohio 1977), *aff'd,* 624 F.2d 1099 (6th Cir. 1980), *rev'd on other grounds*, 452 U.S. 337, 344 (1981); *Stokes v. Hurdle*, 393 F. Supp. 757, 761 (D. Md. 1975), *aff'd*, 535 F.2d 1250 (4th Cir. 1976.) For a prisoner or a pre-trial detainee to state a constitutional claim for denial of medical or dental care, he must demonstrate that a defendant's acts or omissions amounted to deliberate indifference to his serious medical needs. *See Estelle,* 429 U.S. at 106. In essence, the treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir.1990) (citation omitted).

"Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones,* 145 F.3d 164, 168 (4th Cir.1998). Mere negligence or malpractice does not rise to a constitutional level. *See Russell v. Sheffer,* 528 F.2d 318, 319 (4th Cir.1975); *Donlan v. Smith,* 662 F. Supp. 352, 361 (D. Md.1986). Furthermore, a plaintiff seeking preliminary relief is required to demonstrate that he is likely to succeed on the merits, that he is likely to suffer irreparable injury in the absence of an injunction, that the balance of equities tips in his favor, and that injunction is in the public interest. *See Winter v. Nat. Res. Def.*

*Council, Inc.*, 555 U.S. 7, 20 (2008).

Based on the evidence currently before the court, I find that Littek has not met his burden to demonstrate that he is likely to succeed on the merits of his civil rights claim or that he is likely to suffer irreparable injury in the absence of an injunction. While Littek's Complaint claimed that he was being denied dental care, the evidence before the court is to the contrary. Dr. Wyatt testified that Littek had been seen on four occasions by the dentist and dental staff since arriving at Pocahontas in May 2015. According to Dr. Wyatt, the dentists and dental staff at Pocahontas have not denied Littek dental care, but, instead, have attempted to hasten the process so that Littek may receive his dentures prior to his release date.

Further, Littek has failed to show that he suffers from any serious medical need or that he is likely to suffer irreparable injury without an injunction. While Littek complains of pain and difficulty eating and weight loss while awaiting his dentures, he conceded at the hearing that he has not sought any medical treatment or medication for any of his complaints. He also conceded that he had not requested a soft mechanical diet, which Dr. Wyatt stated was available at all VDOC facilities. Although the uncontradicted evidence does show that Littek has sustained a weight loss since his arrival at Pocahontas, Nurse Hampton testified that the amount of weight lost by Littek was not medically significant. Hampton further testified that, despite his weight loss, Littek remained above the average weight for a man of his height. Based on this evidence, I do not find that preliminary injunctive relief is appropriate.

# PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Littek has failed to show that the defendants have denied him necessary dental care;
2. Littek has failed to show that he is suffering from a serious medical need;
3. Littek has failed to show that he is likely to succeed on his claim that the defendants have been deliberately indifferent to his serious medical needs; and
4. Littek has failed to show that he is likely to suffer irreparable injury without a preliminary injunction.

# RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend the court deny Littek's Motions requesting preliminary injunctive relief.

# Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The

judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: April 15, 2016.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE