**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **THOMAS ANTHONY LITTEK,** | ) | |
| Plaintiff | ) | Civil Action No.: 7:16cv00072 |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **HAROLD CLARKE, et al.,** | ) | |
| Defendants. | ) | |
| | ) | By: Pamela Meade Sargent |
| | ) | United States Magistrate Judge |

The plaintiff, Thomas Anthony Littek, an inmate incarcerated at Pocahontas State Correctional Center, ("PSCC"), in Pocahontas, Virginia, and proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendant prison officials,[1] all of whom are current or former employees of the Virginia Department of Corrections, ("VDOC"), have been deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment rights, by denying him dentures and that they were negligent under Virginia law in failing to provide follow-up dental care to him after he underwent a multiple-tooth extraction procedure on September 18, 2015. Littek seeks declaratory and injunctive relief. Specifically, he asks the court to declare that the defendants violated his Eighth Amendment rights and were negligent by failing to provide him adequate dental care. He further asks the court to issue an injunction requiring the defendants provide dental care that will restore his oral health. This case is before the court on the Defendants' Motion For Summary Judgment, (Docket Item No. 59),

---

[1] Littek sues the following defendants: (1) Harold Clarke, the Director of the VDOC; (2) Frederick Schilling, the former Medical Director of the VDOC; (3) Stanley Young, Warden of PSCC; and (4) Dr. Adam K. Wyatt, D.D.S., the Dental Director of the VDOC.

-1-

("Motion").[2] Littek has responded to the Motion. (Docket Item No. 65, ("Response")). None of the parties has requested a hearing on the Motion, making it ripe for disposition. The Motion is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned now submits the following report, recommending that the court grant the motion and enter summary in favor of the defendants on Littek's § 1983 claim and dismiss Littek's state law negligence claim.

## I. Facts[3]

Littek alleges in his sworn Complaint that, since his arrival at PSCC on May 22, 2015, he diligently has sought the provision of dentures, but to no avail. He alleges that, prior to being incarcerated in 2013, a dentist prescribed a course of treatment for him that included extracting teeth and fitting him with dentures. He claims that, after his incarceration, and while being held at the Middle River Regional Jail, the jail dentist pulled his remaining upper teeth on November 18, 2014. Littek, thereafter, was transported to a VDOC reception site at Powhatan Correctional Center, ("Powhatan"), on April 20, 2015, where he received a dental examination by a VDOC dentist on April 28, 2015. According to Littek, this dentist also advised him he needed dentures and instructed him to submit the appropriate request to the Dental Department, which he did while still at Powhatan.

---

[2] Littek previously filed motions for preliminary injunctive relief related to the alleged failure to provide him with dentures. (Docket Item Nos. 7, 28.) Following an evidentiary hearing on March 31, 2016, the undersigned, in a Report and Recommendation, recommended that these motions be denied. (Docket Item No. 52.) By order dated May 9, 2016, the court adopted the undersigned's Report and Recommendation, denying Littek's motions for preliminary injunction. (Docket Item No. 64.)

[3] On a motion for summary judgment, the court may review a number of materials to determine whether a genuine dispute of any material fact exists, including sworn testimony, affidavits, sworn pleadings, discovery responses and other materials contained in the record. *See* FED. R. CIV. P. 56(C).

After being transferred to PSCC, Littek submitted several Request for Service Forms to the Dental Department, requesting dental treatment for the provision of dentures. The responses to these requests, by either Dental Assistant Ellis or Messer, repeatedly advised Littek that he was scheduled to see a dentist.

On June 26, 2015, Littek filed an Informal Complaint stating that, at that time, he had no upper teeth, no posterior teeth and only eight lower anterior teeth, which were loose. He advised that his gums bled, and he could not chew food. Littek expressed his belief that, pursuant to VDOC Operating Procedure, ("OP"), 720.6, his case qualified as "high priority" and that dental staff was acting with deliberate indifference toward his serious medical need. (Docket Item No. 1-1 at 7.) Dental Assistant Ellis responded to this Informal Complaint on July 1, 2015, stating that the Dental Department had received five previous requests from Littek to have a set of dentures made and that he would receive a pass in the mail when his appointment came up. (Docket Item No. 1-1 at 7.) Thereafter, on July 2, 2015, Littek filed a Regular Grievance based on the same complaints. (Docket Item No. 1-1 at 8-9.) A Level I Response was received on July 29, 2015, concluding that the Grievance was unfounded, as Littek was classified at his intake dental examination on April 28, 2015, as needing dental treatment, but not emergency treatment, and that he was on the list to be seen by the Dental Department. (Docket Item No. 1-1 at 11.) Again, Littek appealed this Response, (Docket Item No. 1-1 at 12-13), and, again, his Grievance was deemed unfounded in a Level II Response dated August 7, 2015. (Docket Item No. 1-1 at 16.) In this Response, it was noted that Littek's dental needs were classified as routine, and he would not be advanced ahead of other patients who also had routine dental needs. It further was noted that the dental staff had followed policy as stated in VDOC Operating Procedure 720.6 in scheduling his dental appointment. (Docket Item No. 1-1 at 16.) At that point, Littek had exhausted all administrative remedies regarding this issue.

-3-

The defendants have provided the court with a sworn affidavit from defendant Dr. Adam Wyatt, D.D.S., the Dental Director of the VDOC since September 1, 2015. (Docket Item No. 60-1, ("Wyatt Affidavit")). Dr. Wyatt also provided testimony at the March 31, 2016, hearing. Operating Procedure 720.6, "Dental Services," ("OP 720.6"), governs the procedure for providing dentures to inmates in the VDOC and the provision of dental care, generally. Pursuant to OP 720.6 § IV(H)(2)(v), the provision of complete and partial dentures is classified as "routine dental treatment." (Encl. A to Wyatt Affidavit). Operating Procedure 720.6 § VII(C) states that routine dental treatment will be provided to offenders as resources of staff, time and materials are available and commensurate with the offender practicing good oral hygiene. It further provides that such care is equitably controlled by use of appointments, which are scheduled according to the chronological date on the inmate's request form. *See* OP 720.6 § VII(C)(1)(a). According to OP 720.6 § VIII(C)(4)(d), complete and partial dentures should be made when the facility dentist determines they are necessary for mastication and the offender's earliest release date is at least one year from initiation of prosthodontic treatment. Before proceeding with prosthodontic treatment, oral hygiene must be acceptable, appropriate periodontal and restorative treatment must be completed, and proper surgical healing must have occurred. *See* OP 720.6 § VIII(C)(4)(d)(iv).

Dr. Wyatt testified that the process of making dentures for a VDOC inmate consists of four stages: (1) preliminary impressions; (2) custom final impressions or molds; (3) the wax rim records; and (4) the wax tooth set-up. (Wyatt Affidavit at 2.) Dr. Wyatt testified that all inmate dentures are made at the VDOC lab in Sussex, Virginia. (Wyatt Affidavit at 2.) Dr. Wyatt also testified that preliminary impressions to begin to manufacture dentures would be made only after an initial examination to determine if dentures were needed and any necessary procedures

-4-

had been performed to stabilize the inmate's mouth in preparation for dentures. The dentist determines what type of prosthesis will work best for the inmate. These preliminary impressions are returned to the lab for a cast to be made, which is used in making the final dentures. Next, the lab will forward the wax rim records for adjustments to be made. These wax rim records are then returned to the lab for the placement of teeth. Finally, the lab will send the wax tooth set-up for the inmate to try. Necessary adjustments are made, and the wax tooth set-up is returned to the lab for the final hard resin denture to be manufactured. Dr. Wyatt testified that dentures typically take one year to complete from the time of the preliminary impressions to delivery, assuming the treating dentist finds that everything fits the patient at acceptable standards at each of these stages. (Wyatt Affidavit at 2.) Likewise, Dr. Wyatt testified that there typically is a three- to four-month turnaround time between each stage in this process due to laboratory processing time. Therefore, OP 720.6 requires that an inmate have at least one year remaining to serve on his sentence to ensure delivery of the dentures before the release date. (Wyatt Affidavit at 2.) The record reveals that Littek's projected good time release date is September 27, 2016. (Docket Item No. 60-1 at 45.)[4]

Here, Littek saw the dentist on August 14, 2015, at which time impressions were made to begin making the upper denture. (Wyatt Affidavit at 2; Docket Item No. 60-1 at 15.) The dentist advised Littek that four of his eight lower teeth needed to be extracted, for which an appointment would be scheduled. (Docket Item No. 60-1 at 15.) Littek returned to the dentist on September 18, 2015, at which time four of his lower teeth were extracted in preparation for a lower partial denture.

---

[4] The court notes Littek's contention that dentures can be completed in six months' time for female inmates and, therefore, the same should be accomplished for male inmates, such as himself. I would disagree, however, with Littek's interpretation of OP 720.6 § VIII(D)(4)(iv)(d), which actually allows only for the *initiation*, not the *completion*, of the prosthodontic process for female inmates with at least six months remaining on their sentence.

Case 7:16-cv-00072-JLK-PMS   Document 77   Filed 06/09/16   Page 5 of 23   Pageid#: 437

(Docket Item No. 60-1 at 15.) Littek declined pain medication at that appointment. (Docket Item No. 60-1 at 15.) On September 25, 2015, the dentist took impressions of Littek's lower gums to begin making a lower partial denture for him, to be combined with the full upper denture that was started on August 14, 2015. (Wyatt Affidavit at 2; Docket Item No. 60-1 at 15.) On February 3, 2016, Littek was seen in the Dental Department for a routine examination and cleaning. (Docket Item No. 60-1 at 15.) On March 22, 2016, Littek saw Dr. Plapp for the wax bite try-in stage for his complete upper denture and lower partial. (Wyatt Affidavit at 2-3; Docket Item No. 60-1 at 44.) It was specifically noted that Littek did not complain about anything, including his diet or ability to chew, at that time. (Docket Item No. 60-1 at 44.) The wax dentures arrived at PSCC on April 20, 2016. (Wyatt Affidavit at 3.) Littek was scheduled to see the dentist on May 9-10, 2016, for the wax tooth set-up, at which time the dentist places the wax dentures in the inmate's mouth, makes any necessary adjustments and sends them back to the lab with a prescription for the dentures to be processed in the resin material. (Wyatt Affidavit at 3.)

In his Complaint, and various other documents filed with the court, Littek alleges that his dental condition has resulted in pain in his mouth, bleeding, swelling and soreness of the gums, an inability to eat properly, slicing of the upper gums by the lower teeth and weight loss. Littek testified at the March 31, 2016, hearing that he had difficulty eating foods such as apples, hot dogs, hamburgers, salads, tacos and breaded meats. He further testified that his food did not digest properly because he had to swallow it in larger chunks. Littek testified that the only utensil provided to PSCC inmates is a "spork," which is a combination spoon and fork. He stated that he could use this spork to cut his food into smaller bits, but it was not the same as grinding food with the teeth. He stated that the prison had never offered to provide him a soft diet or to cut or puree his food. Dr. Wyatt

-6-

testified that a mechanical soft diet[5] would have been provided to Littek if he had requested one. Littek conceded that he had never requested a soft diet from the Dental Department or the Food Services Department, and he contends in his Response that no such diet is available to inmates at PSCC.

Additionally, the record reflects that Littek has been seen by the Medical Department at PSCC on three occasions since his incarceration there. Specifically, Littek was seen in the Medical Department on December 30, 2015; January 15, 2016; and March 12, 2016. These visits consisted of complaints of hemorrhoids and red, irritated and scratchy eyes, as well as a routine examination performed approximately six months prior to an inmate's release. Littek did not complain of pain, weight loss or any other symptoms due to his dental condition at any of these visits. Moreover, when Littek had multiple teeth extracted on September 18, 2015, he declined any pain medication. (Docket Item No. 60-1 at 15.) Littek's medical records reflect that his was 61 to 62 years old at all times pertinent to these claims, and 5'10" tall. At intake at PSCC on May 22, 2015, he weighed 175 pounds. On December 30, 2015, he weighed 171 pounds, 169.4 pounds on January 15, 2016, and 163 pounds on March 12, 2006. (Docket Item No. 60-1 at 35, 45.) Licensed Practical Nurse Hampton testified at the March 31, 2016, hearing that the average weight for a man of Littek's age and height was 156.6 pounds. She further testified that such a weight loss was not medically significant and that an individual's weight could fluctuate daily, with the lowest weight usually being in the morning. While Nurse Hampton agreed that such a 12-pound weight loss generally required an individual to eat fewer calories than expended, she also noted other causes for weight loss, including bowel movements and stress or anxiety.

---

[5] Dr. Wyatt explained that a mechanical soft diet consists of foods that have been blended like baby food.

-7-

In their Response To Plaintiff's First Set Of Interrogatories And Request For Production Of Documents, (Docket Item No. 49), the defendants state that Harold Clarke, as the Director of the VDOC, does not make decisions regarding an offender's medical needs or appropriate course of treatment. Instead, he relies on the professional judgment of the health care providers and does not substitute his own judgment for their professional opinions concerning an offender's condition or treatment. The defendants state that Frederick Schilling, the former Medical Director for the VDOC, is not a medical doctor and made no decisions regarding offenders' medical or dental treatment. They compared this position to a hospital administrator. The defendants state that the Chief Dentist of the VDOC, Dr. Adam Wyatt, is responsible for the oversight of dental services provided to offenders incarcerated in VDOC facilities. They state that he is responsible for planning, budgeting, training and supervision of dentists employed or contracted by the VDOC. Finally, the defendants state that the Warden of PSCC, Stanley Young, has no responsibility or supervision over the actual administration of medical or dental services provided by the health care providers there. They state that he is not a medical doctor, nor is he qualified to make medical decisions regarding the diagnosis or treatment of any offender's medical needs. The defendants state that medical and dental judgments always rest with qualified medical and dental personnel who are trained to make appropriate decisions regarding care and treatment of offender patients. The defendants further state that Young does not substitute his judgment for health care providers' professional opinions concerning an offender's condition or treatment.

## II. Analysis

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings,

responses to discovery and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, *Ky.,* 93 F.3d 230, 233 (6th Cir. 1996).

In the Motion, the defendants argue that they are entitled to a grant of summary judgment in their favor on Littek's deliberate indifference claim because he has failed to establish that he suffered from a serious medical need. Therefore, they further argue, they could not have been deliberately indifferent to a serious medical need as required to sustain an Eighth Amendment violation based on inadequate medical care. The defendants also argue that Littek's negligence claim fails because negligence cannot form the basis for a constitutional claim under § 1983 and, even if it could, it fails on the merits. Littek, on the other hand, argues in his Response that there are several disputes of material fact, precluding the entry of summary judgment against him. He further argues that the defendants have not properly answered his discovery requests, thereby making the entry of summary judgment inappropriate at this time. For the reasons that follow, I recommend that

-9-

the court grant the defendants' Motion and enter summary judgment in their favor on Littek's § 1983 claim.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on one convicted of a crime. *See* U.S. CONST. amend VIII. It provides protections with respect to "the treatment a prisoner receives in prison and the conditions under which he is confined." *Shakka v. Smith*, 71 F.3d 162, 165-66 (4th Cir. 1995) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "The showing necessary to demonstrate that the deprivation of which a prisoner complains is serious enough to constitute cruel and unusual punishment 'varies according to the nature of the alleged constitutional violation.'" *Shakka*, 71 F.3d at 166 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements. First, that "the deprivation of [a] basic human need was *objectively* 'sufficiently serious,'" and that "*subjectively* 'the officials act[ed] with a sufficiently culpable state of mind.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

In order to prevail on a claim for denial of medical care under the Eighth Amendment, a plaintiff must prove facts sufficient to demonstrate a deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). First, the plaintiff must establish the existence of an objectively sufficiently serious medical need. A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *See Farmer v. Brennan*, 511 U.S. 825, 832-35 (1994); *Sosebee v. Murphy*, 797 F.2d 179, 182-83 (4th Cir. 1986); *Loe v. Armistead*, 582 F.2d 1291, 1296-97 (4th Cir. 1978). The subjective component

of an Eighth Amendment claim challenging the deprivation of a serious medical need is satisfied by a showing of deliberate indifference by prison officials. *See Wilson*, 510 U.S. at 303; *Farmer*, 511 U.S. at 834. "[D]eliberate indifference entails something more than mere negligence, … [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. To establish deliberate indifference in this context, a plaintiff must present facts to evince that the prison officials had actual knowledge of and disregard for an objectively serious medical need. *See Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). Questions of medical judgment are not subject to judicial review. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). A claim regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment do not state cognizable constitutional claims under the Eighth Amendment. *See Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990); *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Estelle*, 429 U.S. at 105-06.

To bring a constitutional claim based on deliberate indifference to a serious medical need against nonmedical personnel, an inmate must show that prison officials were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment or tacitly authorized or were indifferent to the prison physician's misconduct. *See Miltier*, 896 F.2d at 854. Supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel. *See Miltier*, 896 F.2d at 854. Furthermore, a defendant who occupies a supervisory position may not be held liable under a theory of respondeat superior in a § 1983 action. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-92 (1978); *Ross v. Reed*, 719 F.2d 689, 698 (4th Cir. 1983) (finding that respondeat superior liability has no place in § 1983 jurisprudence).

-11-

Here, I find that there is no genuine dispute that all of the named defendants constitute nonmedical personnel who were not personally involved with the alleged denial of Littek's dental treatment. Littek has named the Warden at PSCC, the Director of the VDOC, the former Medical Director of the VDOC and the Dental Director of the VDOC. None of these individuals were actually involved in providing Littek's dental treatment at PSCC. I also find that there is no genuine issue that any of these defendants deliberately interfered with a prison doctor's or dentist's treatment of Littek. In other words, Littek does not contend that the dental staff at PSCC had plans to adequately treat him in order to provide him a set of dentures in a timely manner, but the defendants interfered in that plan so that he could not receive his treatment and/or dentures. Lastly, I find that there is no evidence suggesting that the defendants tacitly authorized or exhibited indifference to a prison doctor's or dentist's misconduct. To the extent that Littek might be alleging any misconduct on the part of the Dental Department staff, I find that he has failed to establish the existence of a genuine dispute in material fact. For instance, viewing the facts in the light most favorable to Littek, he was received at Powhatan on April 20, 2015, and a dental examination was performed on April 28, 2015, just a little more than a week later. He submitted one request form while at Powhatan, requesting dentures. After transferring to PSCC on May 22, 2015, Littek began submitting request forms to the Dental Department, inquiring when he would see a dentist for the provision of dentures. Littek was repeatedly advised that he was on the schedule to be seen. Littek did see the dentist on August 14, 2015, a little less than three months later. At that appointment, impressions were made to begin making the upper denture, and the dentist advised Littek that four of his lower teeth needed to be extracted, for which an appointment would be scheduled. Approximately one month later, on September 18, 2015, these teeth were extracted in preparation for a lower partial denture. A week later, on September 25, 2015, impressions were made of Littek's lower gums to begin

-12-

making the lower partial denture. On February 3, 2016, Littek saw a dental hygienist for a routine examination and cleaning. On March 22, 2016, Littek saw Dr. Plapp for the wax bite stage for his complete upper denture and partial lower denture. The wax dentures arrived at PSCC on April 20, 2016. Littek was scheduled to see the dentist on May 9-10, 2016, for the wax tooth set-up stage, the final stage in the process before Littek receives the resin dentures.

Thus, the facts viewed in the light most favorable to Littek demonstrate that he has received regular dental treatment since his arrival at PSCC. More specifically, he has seen a dentist or dental hygienist on six different occasions, and was scheduled for another appointment on May 9-10, 2016, to complete the final stage in the process of receiving his dentures. Furthermore, all of these visits, except the routine examination and cleaning in February 2016, were specifically related to Littek's receipt of dentures. Therefore, I find that there is no genuine dispute in material fact that the dental staff at PSCC did not engage in any misconduct. That being so, there is no genuine dispute that the defendants tacitly authorized or were indifferent to any such misconduct. Furthermore, I find that all of the defendants are current or former supervisory VDOC officials, who are not subject to liability under a theory of respondeat superior. *See Monell*, 436 U.S. at 690-92. Instead, these defendants were entitled to rely on the judgment of PSCC dental staff to identify inmates with routine dental needs versus emergency dental needs and to schedule them accordingly pursuant to policy as stated in OP 720.6. For these reasons, I recommend that the court grant summary judgment in the defendants' favor on Littek's § 1983 deliberate indifference claim.

Even assuming that the defendants were subject to liability, I find that summary judgment should be entered in the defendants' favor on Littek's § 1983 claim because he has failed to demonstrate a genuine dispute in material fact as to

-13-

the defendants' subjective deliberate indifference. I find that Littek has made a sufficient showing to create a genuine dispute of material fact as to the objective component, i.e., that his lack of teeth constitutes a serious medical need. In his Complaint and other documents, as well as during his testimony at the March 31, 2016, hearing, Littek alleges that he has pain in his mouth, bleeding and swelling of the gums, constant soreness of the gums, improper digestion, weight loss and a feeling of disfigurement. This court, in *McCauley v. Johnson*, 2007 WL 2713067, at *4 (W.D. Va. Sept. 17, 2007), cited to several cases related specifically to a lack of dentures, finding a serious medical need had been demonstrated. *See Wynn v. Southward*, 251 F.3d 588 (7th Cir. 2001) (ruling that allegations that an inmate suffered bleeding, headaches and disfigurement as a result of not having his dentures demonstrated that the inmate had a serious medical need, supporting his § 1983 claims that his Eighth Amendment rights were violated when he was deprived of dentures); *Farrow v. West*, 320 F.3d 1235, 1244-45 (11th Cir. 2003) (few or no teeth and a definite need for dentures, in addition to pain, continual bleeding, swollen gums, two remaining teeth slicing into the gums and weight loss establishes a serious medical need); *Hunt v. Dental Dep't*, 865 F.2d 198, 201 (9th Cir. 1989) (inmate with no dentures suffering severe pain, bleeding gums and breaking teeth could have a serious medical need); *Tripp v. Commonwealth of Pa.*, 2005 WL 3132317, at *3 (M.D. Pa. Nov. 22, 2005) (denying a motion to dismiss and permitting an Eighth Amendment claim to go forward where plaintiff had teeth extracted by a prison dentist and was refused further treatment, including the provision of dentures, when he suffered from pain and continual bleeding gums); *Gassaway v. District of Columbia*, 1996 WL 225699, at *3-4 (D. D.C. Apr. 29, 1996) (allegations that a nine-month delay between the time dentists extracted several of plaintiff's teeth, leaving him with only six lower teeth in his entire mouth, and the time that replacement dentures were inserted by a prison dentist exhibited deliberate indifference to his serious medical needs to proceed to trial).

-14-

Here, the defendants question Littek's allegations of pain and other symptoms allegedly related to his dental condition, noting that he never made any complaints of pain or other symptoms to either the Dental Department or the Medical Department and that he had not requested a mechanical soft diet be provided to him. However, viewing the facts in the light most favorably to Littek, and given the above-stated case law, I find that he has established a genuine dispute in material fact as to this issue.

Nonetheless, for the reasons that follow, I find that Littek has failed to establish a genuine dispute in material fact as to the subjective prong of his deliberate indifference claim. As stated earlier, to establish deliberate indifference by prison officials as to an inmate's serious medical need, Littek must show that the defendants had actual knowledge of a serious medical need and a disregard for it. *See Rish*, 131 F.3d at 1096. It is clear that the dental staff at PSCC was aware of Littek's alleged serious medical need, given his Request for Service Forms, his Informal Complaint and Grievance and his multiple dental appointments. However, Littek has produced little evidence that any of the defendants had such knowledge. For instance, while Littek sent a letter to defendant Stanley Young, the Warden at PSCC, regarding his complaints related to his dental condition, there is no evidence that any of the other defendants had such knowledge. Even assuming that they all had such knowledge, there simply is no evidence that these defendants or the dental staff at PSCC disregarded Littek's requests for dentures or dental treatment. Instead, the evidence, as stated above and not repeated in its entirety, suggests that he received regular dental treatment according to VDOC policy. Furthermore, Littek had an appointment scheduled for May 9-10, 2016, at which time the dentist would place the wax tooth set-up in his mouth to make final adjustments before returning it to the lab where the resin dentures would be manufactured. The court has no reason to believe this appointment did not occur.

-15-

Thus, for all of these reasons, I find that Littek has failed to establish a genuine dispute in material fact regarding the defendants' disregard of a serious medical need of which they were aware. Therefore, I find that the entry of summary judgment in the defendants' favor is appropriate on this ground, as well, and I recommend that the court grant the Motion.

Littek also raises a state law negligence claim against the defendants for failing to provide proper follow-up treatment after his lower teeth were extracted on September 18, 2015. I find that this claim fails for multiple reasons. As the defendants state in their brief, this court should decline to exercise pendant jurisdiction over this state law claim, given Littek's failure to survive summary judgment on his § 1983 claim. *See* 28 U.S.C.A. § 1367(c)(3) (West 2006) (a district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction."). Additionally, even if the court were to exercise supplemental jurisdiction over Littek's negligence claim, the record clearly shows that Littek did, in fact, receive follow-up treatment after having four lower teeth extracted on September 18, 2015.  More specifically, Littek's dental records reflect that he saw the dentist a week later, on September 25, 2015, at which time he made no complaints of pain or any other difficulties, and the dentist noted no complications from the multiple-tooth extraction. Thus, Littek was seen soon after the extraction procedure, at which time there was no evidence of any complication or residual pain. Also, Littek has produced no evidence that the treatment he received deviated from the acceptable standard of care.  *See Raines v. Lutz*, 341 S.E.2d 194, 196 (Va. 1986) (medical malpractice claims require evidence of the appropriate standard of care, a deviation from the standard and that such a deviation was the proximate cause of the claimed damages.) That being the case, I find that, if the court were to

-16-

address Littek's state law negligence claim, the court should grant summary judgment in the defendants' favor.

Insofar as Littek seeks to pursue his § 1983 action on a claim of negligence, it, too, would fail because it is well-settled that questions of medical judgment are not subject to judicial review. *See Russell*, 528 F.2d at 319. It also is well-settled that claims regarding a disagreement between an inmate and medical personnel over diagnosis and course of treatment do not state cognizable constitutional claims under the Eighth Amendment. *See Miltier*, 896 F.2d at 851-52; *Wright*, 766 F.2d at 849; *Estelle*, 429 U.S. at 105-06. That appears to be the case here. Littek alleges that the Dental Department did not follow up on his extraction procedure to his liking. However, this constitutes nothing more than a disagreement between Littek and the PSCC dental staff over his course of treatment.

Lastly, Littek argues that granting summary judgment in the defendants' favor is inappropriate at this time because he has been unable to obtain necessary discovery from them. For the reasons that follow, I am not persuaded by Littek's argument. Littek contends that the defendants have failed to provide responses to four interrogatories / requests for production, claiming that they are overly broad, burdensome, irrelevant, and the like.[6] As a general rule, summary judgment is appropriate only after "adequate time for discovery." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (quoting *Celotex*, 477 U.S. at 322; *Temkin v. Frederick Cty. Commr's*, 945 F.2d 716, 719 (4th Cir. 1991), *cert. denied*, 502 U.S. 1095 (1992)). "[S]ummary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Evans*, 80 F.3d at 961 (quoting *Anderson*, 477 U.S. at

---

[6] On June 2, 2016, Littek filed a motion to compel, which the court, by separate order entered this same day, will deny.

-17-

250 n.5). Additionally, the Fourth Circuit has held that a nonmoving party cannot complain that summary judgment was granted without discovery unless the party had made an attempt to oppose the motion on the grounds that more time was needed for discovery or moved for a continuance to permit discovery before the district court ruled.  *See Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995). Federal Rules of Civil Procedure Rule 56(f) allows a court to deny summary judgment or to order a continuance if the nonmovant shows through affidavits that it could not properly oppose a motion for summary judgment without a chance to conduct discovery. In *Evans*, the Fourth Circuit stated that it placed great weight on the Rule 56(f) affidavit, "believing that '[a] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit.'"  80 F.3d at 861 (quoting *Nguyen*, 44 F.3d at 242 (citing *Hayes v. N. State Law Enf't Officers Ass'n*, 10 F.3d 207, 215 (4th Cir. 1993)); *see also Rohrbough v. Wyeth Labs, Inc.*, 916 F.2d 970, 972 n.3 (4th Cir. 1990) (if plaintiffs arguing that summary judgment was premature because they had inadequate time for discovery were "genuinely concerned," then they should have sought relief under Rule 56(f)).

It also is true, however, that "[w]hen the nonmoving party, through no fault of its own, has had little or no opportunity to conduct discovery, and when fact-intensive issues, such as intent, are involved, courts have not always insisted on a Rule 56(f) affidavit if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (citing *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380-81 (D.C. Cir. 1988); *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97-98 (2d Cir. 2000); *Farmer v. Brennan*, 81 F.3d 1444, 1449-50 (7th Cir. 1996); *Dean v. Barber*,

951 F.2d 1210, 1214 n.3 (11th Cir. 1992)).  Specifically, if the nonmoving party's objections before the court "served as the functional equivalent of an affidavit," *First Chicago*, 836 F.2d at 1380, and if the nonmoving party was not lax in pursuing discovery, then a reviewing court may consider whether a district court granted summary judgment prematurely, even though the nonmovant did not record its concerns in the form of a Rule 56(f) affidavit.  *See Harrods Ltd.*, 302 F.3d at 245-46.

Here, Littek does not direct the court to the specific interrogatories and/or requests for production at issue. However, it appears that the only ones to which the defendants objected on the bases of being overly broad, burdensome, irrelevant and the like are Nos. 8, 10, 13 and 15.  (Docket Item No. 49.)  Interrogatory No. 8 seeks the "names, titles, responsibilities and duties of all staff, other than those described in 1-6,[7] whether employed by the VDOC or the entity described in paragraphs 6 & 7,[8] who have responsibility for ensuring that prisoner requests for dental treatment are responded to." The defendants objected on the grounds that the interrogatory was overly broad, burdensome and would contain information wholly irrelevant to Littek's claim for injunctive relief.  Interrogatory No. 10 seeks the "names, titles, and responsibilities of all staff members at PSCC who have a responsibility for investigating, responding to, or deciding prisoner grievances." The defendants objected on the grounds that the interrogatory was overly broad, vague and cumulative of relevant information already in Littek's possession.  They further stated that corrections personnel involved in the grievance procedure are

_____

[7] Paragraphs 1-6 referenced the four defendants, as well as Armor Correctional Health Services, Inc., which was a previously named defendant, and the medical contractor responsible for providing medical treatment to PSCC inmates.

[8] Paragraphs 6 & 7 reference the medical contractor responsible for providing medical and dental treatment to PSCC inmates.

Case 7:16-cv-00072-JLK-PMS  Document 77  Filed 06/09/16  Page 19 of 23  Pageid#: 451

specific to each grievance, and Littek already had received copies of his own grievances which identified any individuals involved in reviewing the complaints. Interrogatory No. 13 seeks "all the Dental Services Daily Logs and Dental Services Monthly Activities Reports generated by PSCC dental staff between May 22, 2015, and the date of [the defendants'] response." The defendants objected on the grounds that this request was overly broad and would include information wholly irrelevant to Littek's claim. Lastly, Interrogatory No. 15 seeks all "logs, lists, or other documentation reflecting grievances filed by prisoners at PSCC with respect to dental treatment between May 22, 2015, and the date of [the defendants'] response." The defendants objected on the grounds that this request was overly broad, burdensome and would mostly include information wholly irrelevant to Littek's claim for injunctive relief.

First, I note that Littek has not filed a Rule 56(f) affidavit, setting forth the reasons that discovery, thus far, has been inadequate. Furthermore, Littek has not filed a motion asking the court to stay its summary judgment decision and permit further discovery. Instead, Littek merely argues in his Response that the defendants' discovery responses have been incomplete and inadequate, without further elaboration. Finally, I find that a review of the defendants' Response To Plaintiff's First Set Of Interrogatories And Request For Production Of Documents, (Docket Item No. 49), reveals that objections were made to only four interrogatories and/or requests for production. I find that the information sought in these interrogatories is not "essential to [Littek's] opposition" to the Motion. *Anderson*, 477 U.S. at 250 n.5. Essential to Littek's opposition of the defendants' Motion would be information showing that the defendants were deliberately indifferent and that they were deliberately indifferent to his own serious medical

-20-

needs. Thus, I am not persuaded by Littek's argument that summary judgment is inappropriate at this time due to inadequate discovery.

For all of the reasons stated herein, I recommend that the court grant the Motion and enter summary judgment in the defendants' favor on Littek's § 1983 claim. I further recommend that the court dismiss Littek's state law negligence claim.

## PROPOSED FINDINGS OF FACTS AND
## CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. There is no genuine dispute in material fact that the defendants are nonmedical personnel who were not personally involved with a denial of dental treatment to Littek, they did not deliberately interfere with a prison doctor's or dentist's treatment of Littek, and they did not tacitly authorize or exhibit indifference to a prison doctor's or dentist's misconduct;
2. The defendants are current or former supervisory VDOC officials, and they may not be held liable under a theory of respondeat superior in a § 1983 action;
3. Littek has demonstrated a genuine dispute in material fact as to whether his lack of teeth constitutes a serious medical need;
4. Littek has failed to demonstrate a genuine dispute in material fact as to whether the defendants were deliberately indifferent to a serious medical need;
5. The defendants are entitled to summary judgment on Littek's § 1983 deliberate indifference claim for failure to provide adequate dental care;
6. The court should decline to exercise supplemental jurisdiction over Littek's state law negligence claim, given his failure to survive summary judgment on his § 1983 claim;
7. Littek's negligence claim does not state a cognizable constitutional claim under the Eighth Amendment;

8. If the court exercises jurisdiction over Littek's state law negligence claim, the court should enter summary judgment in the defendants' favor on the claim;

9. Littek has filed no Rule 56(f) affidavit, setting forth the reasons that summary judgment is inappropriate at this time due to inadequate discovery; and

10. The discovery sought by Littek is not essential to his opposition to the Motion.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court grant the Motion and enter summary judgment in favor of all of the defendants on Littek's § 1983 deliberate indifference claim. I further recommend that the court dismiss Littek's state law negligence claim.

## <u>Notice to Parties</u>

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion

of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: June 9, 2016.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE